As you've just observed, I'm here representing the Appellant Advanced Recovery Services, a consumer debt collection agency that is headquartered in Jackson, Mississippi. There are three issues for the Court's consideration. One is whether the district court failed to comply with the procedural process for a sua sponte summary judgment motion by not notifying the adverse party of the facts which the Court considered to be undisputed, followed by an opportunity for that party to show cause why a summary judgment should not be entered against it. Secondly, the issue is whether the Court misinterpreted the facts of this case that were actually undisputed in order to fine for the plaintiff under 50 U.S.C. E-8 of the Fair Debt Collection Practices Act, when in fact that this case is a frivolous dispute under the Fair Credit Reporting Act of credit information, which is a subject governed by Section 1681 S-2-8 of the Fair Credit Reporting Act. And finally, the Court erred by finding that Mr. Sayles had Article III standing, even though he neither alleged and admitted that he had no actual damages whatsoever. I've given the panel two sets of handouts, one of which is marked A and the other is B. And if you'll get those in front of you, I think I can expedite the explanation of what the issue is here. A is the set of statutes that were applied or which should have been applied by the district court, and B are the key documents that show why that was not correctly done. A-1 is Section E-8 of the Fair Debt Collection Practices Act. It says that it's a violation of the act for a debt collector to report inaccurate credit information or the failure to report a disputed debt as disputed. A-2 is Section 1692 G of the Fair Debt Collection Practices Act. That tells you how a debt is validated, verified, or disputed. The key thing to remember here is that the validation process is triggered by the issuance of a written notice by the debt collector to the debtor that identifies the debt and provides notice of the rights that appear in Section B of this same subsection. All right. Document B-1. Now, 1692 G.B. is not a definitional section, though, is it? No, sir. There is no definition of dispute under the FDCPA other than what is found in Section 1692 G. So, in that sense, it can be a definitional section, but it is not part of 1692. I believe it's the first section, which does contain some other definitions. Does that answer your question? Go ahead. All right. B-1 is the example notice which my client authenticated with an affidavit for each one of the five debts that Mr. Sales incurred at St. Dominic's Hospital in Jackson. He didn't pay any of those debts. Your contention is that this debt was not disputed under the statute. Is that right? That's correct, because there was nothing received by ARS in response to any of the five debts. When they sent out this notice identical to Exhibit B-1, except it identified each debt individually. Now, if you look at the excerpts from Mr. Sales' complaint, which is document B-2, 3, and 4, I'm not going to read that to the Court, but what it basically says is that the next year after he received and did not respond to these validation notices under Section 1692G, he happened to look at a third-party summary of his credit report. And he says he didn't recognize some of these debts, specifically two, that had not already been reduced to judgment against him. So he says that — The — What do you do with the facts of March 5th, 2014? All right. He says he sent a letter. In fact, that isn't accurate. The letter was actually sent by a paralegal employed by my opponent, Mr. Sheffield's law firm in New Jersey. I'm going to get to that and demonstrate it to the Court. But what — what is going on here is — Was there a fact sent on March 5th, 2014? Yes. Did it dispute one or more of the debts? Not in the fashion specified by the Fair Credit Reporting Act, which is, if you'll take a look — Well, it cites the section that says that your claim is disputed and validation is requested. That looks like a dispute to me. That's under Section 1692G of the FDCPA. It says that. Uh-huh. That is not — it's too late under this Court's interpretation of the Fair Debt Collection Practices Act to be asking for a validation of the debt long after the 30-day what this Court calls contest period has expired. So are you telling us nobody can contest a debt after 30 days? What the Act says is that after that 30-day contest period expires, the Fair Credit Reporting Act gives a mechanism for consumers to dispute information in their credit history, which could include debts, but you have to meet certain requirements. And those requirements — You're not arguing that the debt was not disputed. You're not arguing that there was no disputed debt. No, I am arguing the debt was not — It was disputed. No, it was not disputed in the proper fashion required by Section 1681S2A, which is — which is A3. But 1692E8 sets for what the requirement is for a debt collector, doesn't it? Doesn't it say a debt collector is required to report a disputed debt? My client is both a debt collector and the credit information — So your client made an independent determination that despite what 1692E8 says, because it's real clear that it didn't have to report that the debt was disputed because — It did not. My client is a credit information provider under the Fair Credit Reporting Act and a debt collector, so it's under obligations in both of these statutes. Section 1681S2A, which is A3 of the handout, is the requirements for validly disputing a debt or, excuse me, credit information. What you have to do is identify the specific information that's disputed, explain the basis for the dispute, and document it. If you don't do that, the debt or credit information provider is given discretion to decline or ignore that dispute because of the failure of the consumer to provide sufficient information to facilitate an investigation. And also, organizations — That provision extinguishes any requirement that you may have under 1692E8. Actually, under the circumstances alleged in the complaint, Mr. Sales is complaining about information in his credit history, not the validation notice that was sent to him under the FDCPA, which is the document B1. So what happens here is — But as a debt collector, you provide information that ends up in his credit history. Isn't that correct? That makes him a credit information provider under the Fair Credit Reporting Act, which is governed by the Fair Credit Reporting Act. But in this case, you were a debt collector, weren't you? You just get to switch hats and decide what you are whenever you want. Not for purposes of what he's complaining of in the complaint, which is he's complaining about information in his credit history. He says it over and over again. B7 is the letter that was drafted and faxed by the paralegal from Mr. Lucklover's law firm. Look at it. It does not identify any particular claim. It doesn't have an account number. It doesn't have any facts. Does it need to have that information? It seems to me that 1692A says that if you knew or should have known. And if it says should have known, it doesn't seem to require any specific information. Wouldn't that fax have put you on notice? Judge Prado, if that were true, Congress would not have come back in the 1990s and specifically amended the Fair Credit Reporting Act to add 1681S28. And the reason they did that was to stop abuse of the Fair Credit Reporting Act by credit repair organizations which submitted false disputes or groundless disputes. And they did that for two reasons. One is they figured the people who got the disputes would either say I'm just going to drop it or either they would report it as disputed, in which case the creditors using the credit information would disregard that in computing the debtor's credit score. So either way, they win. Now, if you compare B-9 and B-10 through 11, that is where this letter apparently came from that was sent by the Lutheran Law Firm. It is almost a word-for-word copy of this letter that was on the Internet, except it has two important differences. On B-9 . . . I'm a little slow catching up, but what did you say Congress was trying to do with regard to credit reporting? They came back and changed these requirements so that these credit repair agencies couldn't just dispute debts. In the 1990s, Judge, there was a problem with credit repair organizations sending false disputes or groundless dispute letters. They would inundate the debt collectors and the credit information providers with it. Congress came back and amended the Fair Credit Reporting Act to identify false and frivolous disputes and gave the information provider the right to disregard them, which is exactly what happened here. And they were concerned about that because whether or not a debt is disputed impacts a credit report, doesn't it?  Well, what they were concerned about . . . It doesn't? I'm sorry? Whether or not a debt is disputed is going to impact the credit report and a consumer's credit score, isn't that right? If it's properly disputed, either within the 30-day contest period of the FDCPA . . . All I'm saying is the fact that Congress was concerned about it means that it makes a difference whether or not a dispute is included on a report, doesn't it? It does make a difference if a legitimate dispute is reported, but if it's not a legitimate dispute, the Fair Credit Reporting Act says that it does not need to be reported because you're reporting false information if there's no basis for the dispute. If you go back to B-9, this form letter, just quickly, it clearly is from a credit repair organization because on page 3 of this . . . So is your argument that it's not a dispute or that it's not a legitimate dispute? It is not a dispute. I'm sorry, I didn't hear the last part. Is your argument that the debt is undisputed or that the dispute is illegitimate? The dispute, according to the Fair Credit Reporting Act, is a frivolous, irrelevant dispute. Who makes that determination? The credit information provider does under the Fair Credit Reporting Act when the complaint relates to credit reporting. Look at the letter. The letter from the paralegal is talking about credit reports. On the bottom of the first page, it talks about it again on the second page. That's what they're disputing. Now, Mr. Luplo's law firm, and I'm not . . . I don't know anything else about this other than what I see in the CFPB press release on B-12, was found guilty of defrauding people by providing . . . or they pled or did not contest charges by the CFPB for providing misleading credit repair services. Our point is . . . Is this in the record of this case? Yes, sir. And also, the CFPB consent decree. There's also a consent decree from the Connecticut Department of Banking finding basically the same thing. Now, exhibit, or excuse me, B-13 is my 11th affirmative defense. I raised this in the answer to the complaint. I raised it in the summary judgment motion. The judge just decided that the Fair Credit Reporting Act, in his opinion, didn't apply and refused to consider any of this. Do you have any authority that said it does apply? Yes, sir. It's in my brief. You know, the substantive law in the subject matter of the complaint governs what law applies. The Fair Credit Reporting Act governs credit reporting. But does it affect the Fair Debt Collection Practices Act? We have two different acts, and does one apply to the other? Yes, sir. I mean, what authority is there that says that? They're all part of the Consumer Credit Protection Act. The Fair Credit Reporting Act was enacted in 1970. It did not have anything about these frivolous disputes in it. The Fair Debt Collection Practices Act was enacted in 1977. These frivolous dispute issues were added in the Credit Repair Organization Act and Fair Credit Reporting Act amendments in the 1990s, and they've all been put in a regulation, which is A-4, that the FTC promulgated, which says the same thing as the statute in the Fair Credit Reporting Act. Excuse me, A-5 is the regulations. And A-6 is the part of the Federal Trade Commission Act that simply says that people like this law firm cannot do stuff like this because it's an unfair trade practice. And I've reserved time. Let's save time for rebuttal. Thank you, Mr. Wheeler. Mr. Sheffield? Good morning. May it please the Court. This is a straightforward FDCPA case. 15 U.S.C. 1692e8 prohibits a debt collector who knows or should know that a debt is disputed from failing to communicate that dispute when they communicate regarding the debt. The elements of 1692e8 are met here. These are undisputed facts. Defendant does not deny receiving the letter that was sent. Defendant does not deny updating the credit report thereafter. They make a number of counterarguments about why the straightforward analysis of the district court that 1692e8 was violated is incorrect, but none of them have merit. ARS spends a lot of time talking about the Fair Credit Reporting Act, both in their briefing below and in the briefing in this circuit. But the main thing to remember is there is no authority for this. In their reply brief, ARS admits as much. They say, this brief and ARS's original brief explain when, how, and why relevant portions of the CCPA were enacted and how they should be construed as a whole for the first time in any reported opinion. There is no authority for adopting the standards of the Fair Credit Reporting Act wholesale into 1692e8 under the FDCPA. They are different statutes. ARS is both a furnisher of information under the Fair Credit Reporting Act and they are a debt collector under the Fair Debt Collection Practices Act. Therefore, they have to comply with both statutes. They made a decision here that they simply weren't going to comply with the Fair Debt Collection Practices Act and update Mr. Sale's credit report as disputed when they updated their information on his credit report because they subjectively believe that the dispute was not of sufficient merit. That is not how the Fair Debt Collection Practices Act has been interpreted by courts around the country. The FDCPA has been interpreted that you do not need a, you know, a reason for a dispute or that you do not need to show that the dispute is meritorious. You have a right to dispute under the Fair Debt Collection Practices Act. Sotomayor, what specificity do you have to give in terms of which debt or which claim is being disputed or what amount is being disputed, any of that sort of information? I think the standard is in the statute, which is know or should know that the debt is being disputed. They don't deny receiving the letter. The letter makes it very clear that the debt is, you know, the account is being disputed. I mean, I think it would be ---- So giving the ---- I'm just trying to understand. In your view, just containing the name of the debtor is enough? You would have to provide enough information so that they could identify the accounts. You know, you have Mr. Sales' name, address, Social Security number, date of birth. I mean, the key thing to remember here is that this is not a situation where ARS came back and, you know, told Mr. Sales, you know, can you give us more information? We can't find these accounts that you're talking about. They haven't claimed that they couldn't find them. They claimed that the dispute wasn't of sufficient merit and, therefore, they hadn't they didn't have to do anything. Those are two separate questions. I think if they had raised that they couldn't find the accounts, you know, then that would, you know, create a duty for my client to provide more specificity. But, you know, they're not raising that contention. They've never said they couldn't find them. They just have been making the contention that they didn't have to do anything, and that is not what the Fair Declaration Practice Act prescribes. The interpretation of 1692e8 has been clear, you know, in courts around the country. It has two primary elements. You look at what the Federal Trade Commission and the main case on this issue, the Eighth Circuit Court of Appeals case in Wilhelm v. Credico. There's two main elements. It's whether the defendant knew or should know of the dispute and elected to communicate credit reporting information thereafter. Both of those are met here based on the undisputed facts. You know, they talk about how, you know, there were supposedly they didn't have an opportunity to set forth all of these undisputed facts in their Rule 56 argument. But, you know, there was a status conference which basically turned into an oral argument before the merit – about the merits before the district court. The parties agreed. There were no disputed decisions of fact. The only disputes between the parties were issues of law. And even in their reply brief, I mean, their main contention is that the district court didn't view the facts the way they wanted them to, not that there were all these – there were all these disputed facts that were not considered. So there's no merit to the Rule 56 arguments as to due process, either, because there simply are no disputed facts in this case. Sotomayor, what do you do with the issue of standing if, in fact, as Mr. Westbrook says, you've admitted that you have no actual damages? It's well established that the Fair Declaration Practices Act, there's a component of statutory damages in addition to actual damages. Congress intended that the statutory damages be available even in the absence of actual damages. That is how the FDCPA has been interpreted by courts around the country. There's never been a showing of actual damages that's been required. We don't view Spokio as creating a sea change in the law in this area. You know, it was remanded to the Ninth Circuit to do a concreteness requirement. They didn't find that there was no standing in that case. It was simply reiterating what the existing standing requirements were. We think that, you know, the Fair Declaration Practices Act was the kind of case where Congress identified a harm. You know, there were rampant debt collector abuses. Congress identified these harms. Congress decided we needed to create a statute to protect consumers from these harms, and they enacted the Fair Debt Collection Practices Act. You know, as the court below concluded, you know, the harm here was the exact kind of harm that the statute was enacted to prevent. So what are specifically, could you, I mean, $500, $5,000, $100,000? I mean, is there a specific damage or amount that you're seeking or? Well. I mean, do you say there's no actual damages? We're not claiming actual monetary loss. We're seeking the statutory damages that are provided for under the Fair Debt Collection Practices Act, which are not contingent upon a showing of actual damages as, you know, the case law has developed. And what are those? What would those be? What would be actual damages? I'm sorry. No. The statutory damages. Well, the statutory damages would be the damages that the FDCPA provides for a violation of FDC, the FDCPA. In this case, 15 U.S.C. 1692e8, which is in the discretion of the district court. But in this case, the district court awarded the statutory maximum of $1,000. Those would be the damages in this case that we are seeking. We're not claiming that there were actual damages. But, you know, that's not a required showing under the FDCPA. Our position is that Congress created the FDCPA, and that created injuries that didn't previously exist. And Spokio reiterated that that is something that Congress is able to do. They're entitled to create chains of causation that didn't exist before. The Supreme Court also said in Spokio that you can have standing if there is a real risk of harm from the violation that's at issue. The series of cases that came out of the Northern District of Illinois that we cite in our brief against Portfolio Recovery Associates, you know, talk about the risk of harm is the risk of financial harm due to an inaccurate credit rating from failing to report a dispute. And that's a real risk of harm given the importance that a credit report has in the life of a person. And that is a real risk of harm, and that is sufficient to provide standing in accordance with the statutory violation under the FDCPA. So we don't think Spokio, you know, affects, you know, our standing in any way. Spokio was a narrow decision that remanded to the Ninth Circuit to do a proper concreteness inquiry. It was not a sea change in the law of standing that should change the way that the FDCPA has been interpreted by the lower courts. ARS also argues that my client did not have any right to dispute because the dispute was not sent within the 30-day time period set forth in 1692g. But these are two separate statutory provisions. As Judge Smith pointed out at the beginning of the argument, 1692g is not a definitional section. You know, a dispute is not defined in the FDCPA. We think the proper analysis of how 1692g and 1692e8 interact is set forth in the First Circuit Court of Appeals opinion in Brady v. Credit Recovery Company. They are two separate statutes. 1692e is meant to govern false and misleading representations. 1692g is meant to govern how things work at the beginning of the debt collection process when you receive that first initial collection letter. You know, Congress identified a problem of people being sent dunning letters for the wrong person or for debts that they had already paid, so they wanted to create this system at the very beginning of a debt collection process that would enable people to raise the issues with the debt collectors right away to avoid extended collection process. But that does not mean that it is incorporated in a disputed debt in 1692g as defined throughout the FDCPA. The First Circuit in Brady makes clear that 1692e8, you know, the standard is known or should have known about the existence of the dispute. That's a very different standard than, you know, the 30-day standard in 1692g, which is set forth over and over and over again. But they're setting forth the timeline in 1692g, which supports the notion that disputed debt in and of itself does not have a timeline. If there was a temporal requirement, that would be in a definitional section that would then be applied throughout the FDCPA. Congress wanted to put the temporal requirement in 1692g because that affords greater rights. 1692g gives you the right to force the debt collection or the, you know, or they cease collecting entirely. You know, we're not saying that ARS, you know, could not continue to seek collection of the debts from my client. We're not making a 1692g claim. We're making a much more limited 1692e8 claim, which was simply that, you know, they received a dispute. They chose to report to the credit report. After receiving it, they made the independent decision that they should be the arbiter of whether a dispute is of sufficient merit that it needs to be reported. That is not what the case law of the FDCPA says. By then choosing to report and not reporting the dispute, they have violated 1692e8. This is — it's a straightforward interpretation of 1692e8. The district court was, you know, correct in finding in favor of my client and rejecting the arguments that ARS made below and in this court, if there are no further questions. In your view, then, a letter that was sent that showed the debtor's name and an account number and a one-sentence message that said this debt is disputed would be sufficient to trigger the obligation to report that it's disputed? That is correct. You know, as I said earlier, I think the only circumstance would be that if they could not find the debtor and, you know, they sent communication saying we can't find you, help us provide more information to help locate. But if there's, you know, there's enough information to locate, then the dispute needs to be reported, regardless of whether the debt collector thinks it's of sufficient merit. That's not what the statute provides. You know, that each of their arguments requires this Court to read in elements into 1692e8 that are not there. There is no 30-day requirement. There isn't a requirement that either the debt collector view the dispute as having sufficient validity or ---- I think you're repeating yourself now, Mr. Shaffer. Okay. Thank you. If there are no further questions, I'll let you go. All right. Thank you. Westbrook, you've saved time for your bottle. Your Honor, the problem with this letter that the paralegal at that law firm created is it doesn't dispute anything. It simply says your claim is disputed. It doesn't give any explanation. It doesn't recite the facts that are in the complaint. It doesn't attach a copy of the credit report it supposedly looked at. It doesn't even identify fairly who it came from. It's actually that paralegal masquerading as the debtor without even disclosing the law firm's involvement. Well, let's take my hypothetical that I gave to Mr. Sheffield a minute ago, a letter that gives the name of the debtor and an accurate, specific account number and then just says this debt is disputed. Why would that not be adequate? If that were submitted to the debt collector within the 30-day contest period under 1692g, I would agree that that is a sufficient notice of dispute to trigger the validation, verification, or dispute obligations of the debt collector under 1692g. But if it were not within the 30 days, then it would not trigger, in your view, an obligation to disclose that the debt is disputed? If it can only talk about a credit report, which this letter references credit history repeatedly, I'm talking about the paralegal letter, the industry looks to the Fair Credit Reporting Act and this safe harbor that Congress created in 1996 to stop this exact abuse of the credit reporting process. By falsely reporting a disputed debt without any basis for a dispute, you're inflating the consumer's credit history. That is contrary to the goal of the Fair Credit Reporting Act to provide accurate credit reporting. It's contrary to the Fair Debt Collection Practices Act goal to not competitively disadvantage debt collectors who follow the law. My client followed the law. This was a dispute over a credit report that my client did not even prepare. It was not a response to a validation notice, which is the only time that this obligation to recognize a dispute for any reason or no reason applies. Congress repeated the 30-day limit five times in 1692g because one of the purposes of enacting this part of the FDCPA was so that debtors would not get done for somebody else's debt. That's all the dispute for no reason under the FDCPA means. I've given you the site to the Congressional record. But after 30 days, you cannot dispute the debt? If you wish to dispute something in a credit history, you go under the procedure of the Fair Credit Reporting Act. You can do it either to a credit reporting agency under the same basic set of rules, or you can do it directly to the credit information provider, which is what was done here, but not by the consumer. Has this debt been settled, worked out, agreed whether it's owed or not? Has anything happened, or has the whole thing stayed because of this litigation? I'm sorry. Three of the five debts were reduced to judgment before the lawsuit was filed. The other two are still sitting there because of this litigation. But the point is, if this— Was your determination that the letter was frivolous or the dispute was frivolous based on the fact that it was sent by a third party and not the consumer? I'm sorry? You determined that this dispute was frivolous. Is that right? My client interpreted this letter as a signature format dispute of credit information. We've seen this letter many, many times. And all it's doing is simply saying, I dispute your claim. Your claim is not identified. It's not explained why. It's not documented. There's no basis for any dispute. And what they hope they'll do is simply not report the debt anymore in the future or report it as disputed so it inflates their credit score because they don't count disputed debts in computing credit scores. Well, so in answer to my earlier question, let's assume that a letter is sent within the 30 days and it says this account gives an account number. This account is disputed, but it gives no reasons. But you've told us that that's adequate, though, to constitute a dispute. Yes, and it's adequate for this purpose. What it says in 1692G is the debt collector at that point is obligated to furnish the name and address of the original creditor, if different from the one that's named in the notice, which the debt collector sends out. But that's it. It doesn't require you to prove that you're licensed or the debt is not within statute or all this other stuff that is given. But you agreed that you're talking about two different statutes that have two different purposes. No, sir. They're all part of the same statute, the Consumer Credit Protection Act. The FDCPA is part of it, and so is the Fair Credit Reporting Act. But one has to do with reporting things to a credit bureau, and the other has to do with disputing a debt, right? Those two things cannot be separated under the facts alleged in the complaint. Impossible to separate. He says in his complaint he's disputing his third-party credit history. He's not disputing the debt. He never disputed the debt. But his claim is that you failed to report the dispute. Which is credit reporting, which is governed by the Fair Credit Reporting Act and its dispute provisions, which my client followed, and yet even though it followed the law, it was found liable under the facts of this case. That's wrong. All right. Thank you, Mr. Westbrook. Thank you. The case is under submission. The last case for today, Logan v. Sessions.